UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FRANCIS JOHN APARTMENTS LP,

                        Plaintiff,

v.

HARLEYSVILLE INSURANCE COMPANY
OF NEW YORK

                        Defendant(s).
_____

**COMPLAINT**
(Declaratory Judgment)

Civil Action No. 25-cv-245

Plaintiff Francis John Apartments, LP, by its attorneys Tiveron Law, PLLC, for its Complaint herein, alleges that:

## PARTIES

1. Plaintiff Francis John Apartments, LP is a limited partnership organized and existing under the laws of the State of New York with its principal offices located at 500 Seneca Street, Suite 508, Buffalo, New York.

2. Upon information and belief, defendant Harleysville Insurance Company of New York is a corporation organized and existing under the laws of the State of Ohio with its principal offices located at One West Nationwide Boulevard, Columbus, Ohio.

## JURISDICTION

3. Jurisdiction in the United State District Court is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

4. The amount in controversy exceeds $75,000.00.

## VENUE

5. Venue is proper in the Western District of New York under 28 U.S.C. § 1391(a)(2) as a substantial part of the events giving rise to the claim herein occurred in the district.

## FACTUAL BACKROUND

### A. Insurance Coverage

6. On July 6, 2020, Defendant Harleysville Insurance Company of New York ("Harleysville") issued Insurance Policy MPA00000043880Y to Francis John Apartments LP (the "Insured" or the "Plaintiff"), which was effective from September 1, 2022 to September 1, 2023 (the "Policy").

7. The Policy provided coverages to the Insured which included: (1) Building and Personal Property Coverage and (2) Business Insurance Coverage.

### (1) Building and Personal Property Coverage

8. Under the Building and Personal Property Coverage Form of the Policy (Form CP 0010, Edition 0607), the Policy provided insurance coverage to the Insured for direct physical loss to covered property, which included the apartment building and related property owned by the Insured located at 1201 Broadway, Buffalo, New York.

9. The Building and Personal Property Coverage of the Policy required payment for any direct physical loss resulting from a covered cause of loss, which is a loss resulting from a risk of direct physical loss under the Policy.

10. In the event of such a loss, the Policy required Harleysville to make a loss payment under which Harleysville was required to either:

   a) Pay the value of lost or damaged property;

b) Pay the cost of repairing or replacing the lost or damaged property, subject to certain limitations;

c) Take all or any part of the property at an agreed or appraised value; or

d) Repair, rebuild or replace the property with other property of like kind and quality, subject to certain limitations.

### (2) Business Income Coverage

11. Under the Business Income (And Extra Expense) Coverage Form of the Policy (Form CP 0030, Edition 0607), the Policy provided insurance coverage for lost business income, including rental value.

12. The Policy required Harleysville to pay the actual loss of business income sustained due to the suspension of business operations during the restoration of damaged property.

13. The Policy also required Harleysville to pay any extra expenses incurred by the Insured to continue operations at replacement premises or temporary locations, including any relocation expenses and costs.

### (3) Endorsement – Business Income (and Extra Expense) Actual Loss

14. Under the above-listed Endorsement (CP-7221, Ed. 08-14) (the "Business Income Endorsement"), the Policy continued to require payment by Harleysville for the actual loss of business income sustained by the Insured due to the suspension of business operations caused by direct physical loss or damage to the insured property.

15. The Business Income Endorsement also continued to require the payment of any extra expenses incurred by the Insured to continue operations at replacement premises or temporary locations, including any relocation expenses or costs.

16. Under the Business Income Endorsement, business income means the following:

    a) Net income (the net profit or loss before income tax) that would have been earned or incurred; and

    b) Necessary continuing normal operating expenses incurred, including payroll; and

    c) "Rental Value."

17. If the necessary suspension of operations caused by direct physical damage produces a "Rental Value" loss, Harleysville is required by the Policy to pay the Insured the actual loss of "Rental Value."

18. The above-stated "Rental Value" consists of:

    a) Net Income (the net profit or loss before income taxes) that would have been earned from tenant occupancy at the covered premises (the apartment building at 1201 Broadway, Buffalo, New York);

    b) Continuing normal operating expenses incurred in connection with the covered premises, including:

        i) Payroll; and

        ii) The amount of charges which are the legal obligations of the tenants but would otherwise be the Insured's obligation.

## B. The Covered Loss

19. On May 13, 2023, a fire loss occurred at the insured premises at 1201 Broadway in Buffalo, New York; in addition to the destructive fire damage, significant

damage to common areas and certain apartment units was caused due to water discharged by the automatic fire-extinguishing equipment activated by the fire.

20. The insured immediately advised Harleysville about the loss and made a claim under the Policy; Harleysville acknowledged the Insured's claim in writing on the same date as the loss to which it assigned Claim No. 591336-GO.

21. On or about May 16, 2023, a contractor engaged by the Insured began necessary repair and rehabilitation work on the common areas of the premises and apartment units damaged by the May 13, 2023 fire and resulting automatic sprinkler water discharge.

22. The fire and water discharge made apartment units 106, 107, 201, 209, 301, 302, 309 and 310 (the "Damaged Units") uninhabitable.

23. Therefore, in order to comply with the Insured's legal obligation to house the displaced tenants in the Damaged Units while the contractor performed the necessary repair and rehabilitation work on the Damaged Units, the Insured engaged a second contractor to prepare vacant units on the insured premises for the displaced tenants.

24. Starting on or about May 27, 2023, the aforementioned second contractor proceeded to perform the necessary construction work to prepare the replacement apartment units to house the displaced tenants during the required repair and rehabilitation work on the Damaged Units.

25. In addition to separate construction costs for water restoration and remediation, and the value of damaged units and common areas, the Insured incurred costs for twenty-hour security and monitoring during the above-described repair and rehabilitation work, the costs to restore life safety systems and the costs of fire watch.

26. The following summarizes the value of physical losses and the costs incurred by the Insured due to the May 13, 2023 Loss for which coverage exists under the Policy.

### (1) Physical Losses and Costs

| | | |
|---|---|---|
| a) | Value of Damaged Units and Common Areas | $322,485.64 |
| b) | Prepare Vacant Units for Displaced Tenants | $461,849.00 |
| c) | Water Restoration and Remediation | $47,028.70 |
| d) | Twenty-Four Hour Security and Monitoring | $33,068.32 |
| e) | Restore Life Safety Systems | $13,201.27 |
| f) | Fire Watch | $2,589.68 |
| | | $880,222.61 |

27. As noted, during the period of rehabilitation the eight (8) Damaged Units were uninhabitable and vacant and not providing any rent for the Insured.

28. And as explained above, under the Business Income (And Extra Expense) Coverage Form of the Policy and the Business Income Endorsement, the Policy entitled the Insured to recover the actual rent lost while the Damaged Units were vacant and being rehabilitated.

29. The following summarizes the loss of business income (rent) for which coverage exists under the Policy:

### (2) Loss of Business Income (Rent)

a) Units: 106, 107, 201, 209, 301, 302, 309 and 310
b) Loss Time Period: June 2023 to January 2024 (Eight months)
c) Lost Rent: $740 per unit per month                    $47,360.00
d) Net Loss of Business Income (60.68%)                  $28,738.00

30. Although under the Policy the Insured was entitled to be paid $880,222.61 for the above-listed Physical Losses and Costs, the Insured was only paid $198,097.89

by Harleysville for those losses leaving a total of $682,124.72 remaining unpaid for the referenced Physical Losses and Costs.

31. Together with the net loss of business income (lost rent) payable under the Policy in the amount of $28,738 as stated above, the total amount still payable to the Insured under the Policy for the May 13, 2023 Loss is $710,862.72.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment)

32. The Insured repeats and realleges paragraphs "1" through "31" as if fully set forth herein.

33. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction. . . any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or nor not further relief is or could be sought."

34. An actual controversy has arisen between Harleysville and the Insured as to the duties, responsibilities and obligations of Harleysville under the Policy inasmuch as, upon information and belief, Harleysville disputes the coverage and/or loss payments to which the Insured is entitled under the Policy with respect to the May 13, 2023 Loss described above.

35. The Insured provided the necessary notice to Harleysville and has satisfied all conditions relative to the Insured's claim under the Policy.

36. The Insured is entitled to a declaration that the Policy provided insurance coverage to the Insured under the express Policy provisions including, without limitation, the above-described Building and Personal Property Coverage Form, Business Income (And Extra Expense) Coverage Form and Business Income Endorsement for all losses

described above sustained by the Insured due to the fire and water damage which occurred at the covered property on May 13, 2023.

37. The Insured is entitled to a further declaration that Harleysville is required to fully indemnify and make all of the loss payments for which the Insured has given notice and demanded, including the amount currently payable and remaining unpaid of not less that $710,862.72.

## SECOND CAUSE OF ACTION
(Breach of Contract)

38. The Insured repeats and realleges paragraphs "1" through "37" as if fully set forth herein.

39. Harleysville was obligated under the Policy to provide insurance coverage for the above-described fire and water loss on May 13, 2023 and fully indemnify the Insured by loss payments for all covered losses.

40. Although Harleysville was obligated under the Policy to indemnify the Insured for the full amount of the losses sustained as a result of the May 13, 2023 fire and water damage of not less than $908,960.61, in breach of its contractual obligations under the Policy Harleysville has only paid the Insured $198,097.89.

41. By reason of Harleysville breach of contract, the Insured has been damaged in the amount of not less that $710,862.72.

WHEREFORE, the Plaintiff respectfully requests that the Court enter a Judgment:

(a) Declaring under the First Cause of Action that (i) the Policy provides insurance coverage to the Plaintiff for all losses described above sustained by the Plaintiff due to the fire and water damage which occurred on May 13, 2023 and (ii) the Policy

requires the Defendant to fully indemnify the Plaintiff for all losses sustained by the Plaintiff as a result of the aforesaid fire and water damage;

(b) Awarding the Plaintiff damages under the Second Cause of Action of not less than $710,862.72 for the Defendant's above-described breach of contract relative to the Policy;

(c) Awarding the Plaintiff pre-judgment interest, the costs and disbursements of this action and such other and further relief the Court deems proper.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a jury trial of all issues so triable.

Dated: March 19, 2025
Amherst, New York

TIVERON LAW, PLLC

By: _____
Edward P. Yankelunas, Esq.
*Attorneys for Plaintiff*
2410 North Forest Road, Suite 301
Amherst, New York 14068
Telephone: (716) 636-7600